U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUL - 7 2010

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

THOMAS LAMONT MARTIN JR.,        §
                                 §
              Petitioner,        §
                                 §
v.                               §        No. 4:10-CV-050-A
                                 §
RICK THALER, Director,           §
Texas Department of Criminal     §
Justice, Correctional            §
Institutions Division,           §
                                 §
              Respondent.        §

MEMORANDUM OPINION
and
ORDER

    This is a petition for writ of habeas corpus pursuant to 28

U.S.C. § 2254 filed by petitioner, Thomas Lamont Martin Jr., a

state prisoner currently incarcerated in Midway, Texas, against

Rick Thaler, Director of the Texas Department of Criminal

Justice, Correctional Institutions Division, respondent.  After

having considered the pleadings, state court records, and relief

sought by petitioner, the court has concluded that the petition

should be denied.

I.  Factual and Procedural History

    In February 2006 petitioner was charged by indictment with

sexual assault of a child younger than 17 years of age in Case

No. 1003142D in the Criminal District Court Number Three of

Tarrant County, Texas. (Clerk's R. at 2) The indictment also included a repeat offender notice. (*Id.*) A jury found petitioner guilty of the offense and assessed his punishment at twenty years' confinement. (*Id.* at 50) The state appellate court affirmed the trial court's judgement. *Martin v. State*, No. 02-06-389-CR, slip op. (Tex. App.-Fort Worth Aug. 21, 2008) (not designated for publication). Petitioner did not file a petition for discretionary review but did file a state application for writ of habeas corpus, raising one or more of the claims raised herein, which was denied without written order. *Ex parte Martin*, State Habeas Appl. No. WR-71,819-01. This federal petition followed, wherein petitioner claims he was denied effective assistance of trial counsel. (Petition at 7 & attach.)

The evidence at trial reflects Linda Babineau met petitioner in February 2005 and allowed petitioner, then 29 or 30 years old, to stay in a shed behind her house for several months in Arlington, Texas. Babineau had five children, four daughters and a son. (RR, vol. 3, at 23-37) During the time petitioner was living in Babineau's shed, he occasionally drove M.B., Babineau's then 14- or 15-year-old daughter, to school and to the store. One night, M.B. asked petitioner to drive her to the store, but instead petitioner drove her to Vandergriff Park where he

2

sexually assaulted her.  Afterwards, petitioner told M.B. not to tell anyone.  M.B. later found out she was pregnant, and, in October 2005, she gave birth to a child who was placed for adoption.  (*Id.* at 38-68)  Forensic DNA testing could not exclude petitioner as the biological father of the child.  (*Id.* at 102-08)

## II.  Rule 5 Statement

Respondent believes petitioner has sufficiently exhausted his state remedies on the claims presented as required by 28 U.S.C. § 2254(b).  (Resp't Answer at 4-5)

## III.  Discussion

### *Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication:  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court.  28 U.S.C. § 2254(d).  A decision is contrary to clearly established federal

law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

The Act further requires that federal courts give great deference to a state court's factual findings. *See Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. This presumption applies to all findings, express and implied. *See Valdez v. Cockrell*, 274 F.3d 941, 948 (5th Cir. 2001). The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written opinion, it is an adjudication on the merits, which is entitled to this presumption. *See Singleton v. Johnson*, 178 F.3d

4

381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472

(Tex. Crim. App. 1997).

### Ineffective Assistance of Counsel

Petitioner raises a laundry list of, largely conclusory,

ineffective assistance claims, which include the following

allegations:

(1) Counsel failed to file any pretrial motions;
(2) Counsel failed to investigate, interview and secure defense witnesses;
(3) Counsel failed to interview lead detective Donna Hubbard;
(4) Counsel failed to investigate and interview the victim's family;
(5) Counsel failed to consult with petitioner;
(6) Counsel failed to obtain an investigator;
(7) Counsel failed to request a polygraph examination;
(8) Counsel failed to review petitioner's mental health records and interview petitioner's psychiatrist;
(9) Counsel failed to timely request copies of a child protective services (DPS) investigation favorable to the defense;
(10) Counsel failed to timely move for a continuance for lack of preparation for trial;
(11) Counsel failed to move for a continuance to ensure a conflict-free jury;
(12) Counsel failed to investigate and interview the state's witnesses;
(13) Counsel failed to prepare an opening statement for trial;
(14) Counsel presented unprofessional conduct during voir dire examination;
(15) Counsel failed to request exclusion of a jury charge on good conduct time;
(16) Counsel failed to initiate any type of defense;
(17) Counsel failed to investigate, interview, and voir dire the state's DNA expert witness;
(18) Counsel failed to contact petitioner's family members

5

as character witnesses;

(19) Counsel showed unprofessional conduct during closing argument toward petitioner; and

(20) Counsel failed to instruct the jury on a lesser included offense.

(Pet. at 7 & attach.)

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Attorney error is prejudicial if it renders the result of the proceeding unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Strickland,*

6

The Texas Court of Criminal Appeals denied petitioner's state habeas application without a hearing, findings of fact, or written order. This constitutes an adjudication on the merits by the state court and is entitled to the presumption of correctness. Under these circumstances, a federal court may assume that the state court applied correct standards of federal law to the facts, unless there is evidence that an incorrect standard was applied, and imply fact findings consistent with the state court's disposition. *Townsend v. Sain*, 372 U.S. 293, 314 (1963)[1]; *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003); *Catalan v. Cockrell*, 315 F.3d 491, 493 n.3 (5th Cir. 2002). Thus, assuming the state court applied the familiar *Strickland* attorney-performance standard to petitioner's ineffective assistance claims and made factual findings consistent with the denial of the claims, we defer to the state court's determination unless it appears the decision was contrary to or involved an unreasonable application of *Strickland* or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence in the state court proceedings. *Bell v.*

---

[1]The standards of *Townsend v. Sain* have been incorporated into 28 U.S.C. § 2254(d). *Harris v. Oliver*, 645 F.2d 327, 330 n.2 (5th Cir. 1981).

*Cone*, 535 U.S. 685, 698-99 (2002); *Haynes v. Cain*, 298 F.3d 375, 379-82 (5th Cir. 2002).

### 1)   *Failure to Prepare a Defense*

Petitioner claims his trial counsel, Charles Roach, failed to prepare a defense and should have adopted petitioner's defensive theory that he was unaware that M.B. was underage, that M.B. consented to the sexual activity, and that M.B.'s mother encouraged the relationship in exchange for drugs.

A person commits sexual assault of a child if he intentionally and knowingly engages in sexual intercourse with a child younger than seventeen years who is not the spouse of the actor. *See* TEX. PENAL CODE ANN. § 22.011(a)(2) (Vernon Supp. 2009). Petitioner admittedly had sexual relations with M.B., who was 14 or 15 years of age at the time. In such prosecutions, the state is not required to show that the actor knew the age of the complainant. *See Vasquez v. State,* 622 S.W.2d 864, 865-66 (Tex. Crim. App. 1981). Therefore, when a charge of any sexual offense against a child is made, mistake of fact or the accused's ignorance of the victim's age is not a defense. *Id.* at 866. Further, even if a child consents or agrees to the sexual activity, such consent is not a valid defense. *See May v. State,*

919 S.W.2d 422, 424 (Tex. Crim. App. 1996).   In Texas, M.B. did

not attain the age of consent until she reached 17 years of age.

Accordingly, petitioner's defensive theory is misplaced and

would have been unavailing at his trial.   Any defense grounded on

the theory that petitioner did not know M.B. was underage, that

M.B. consented to the sexual activity, or that her family was

aware of their relationship and encouraged the relationship in

exchange for drugs would have been a poor defense.   "If there is

no bona fide defense to the charge, counsel cannot create one and

may disserve the interest of his client by attempting a useless

charade." *United States v. Cronic,* 466 U.S. 648, 657 n.19 (1984).

A court will not question counsel's reasonable strategic

decisions.   *See Strickland,* 466 U.S. at 691 (counsel's strategic

choices "are virtually unchallengeable").

## 2)   *Failure to File Pretrial Motions*

Petitioner claims trial counsel was ineffective by failing

to file pretrial motions for the purpose of obtaining information

regarding the state's case and contesting the admissibility of

the state's evidence.   (Attach. to Pet. at 2)   Although it

appears counsel did not file any pretrial motions, the record

reflects the state provided counsel with a witness list,

9

supplemental witness lists, notice of petitioner's criminal record and other bad acts, a full copy of the state's file, and other relevant information prior to trial, including DPS records and information of the prosecutor's meeting with Detective Donna Hubbard in which the detective expressed a suspicion that M.B.'s mother possibly used drugs and had allowed petitioner to engage in sexual activity with M.B. in exchange for drugs, which both M.B. and her mother denied.  (RR, vol. 2, at 12-13; Clerk's R. at 7-10,17-19, 22, 30-32, 35)

A failure by counsel to file motions does not *per se* constitute ineffective assistance of counsel. *See Kimmelman v. Morrision,* 477 U.S. 365, 383-84 (1986). Petitioner has failed to state what motions should have been filed or what additional exculpatory information was forfeited as a result of the failure to file the motions. Consequently, he cannot establish deficient performance or prejudice.

### 3)  *Failure to Consult with Petitioner, Investigate, Interview Witnesses, Move for Continuance, and Obtain a Polygraph*

Petitioner claims counsel failed to consult with him, obtain an investigator, review his mental health records, request a polygraph, request DPS records, and investigate and interview

potential defense witnesses, the state's witnesses, including the state's expert DNA witness, the victim's family, the lead detective Donna Hubbard, his psychiatrist, and his family members.

The record is silent as to the number of times counsel consulted with petitioner, however it does reflect counsel discussed the case with petitioner on one or more occasions, was familiar with the facts of the case, conveyed the state's plea offer(s) to petitioner, attempted to contact at least one potential defense witness, advised petitioner of his right not to testify, participated in voir dire, made relevant objections, cross-examined witnesses, and made closing arguments. Petitioner has not shown any reasonable probability that the outcome of the trial would have been different had counsel met with him more times nor does the record demonstrate that counsel was unprepared to challenge the state's evidence.

Petitioner claims counsel was ineffective by failing to obtain an investigator and to investigate and interview witnesses, including his psychiatrist who would have testified that he was heavily medicated at the time of trial, a DNA expert to refute the state's DNA evidence, DPS records that would have

11

shown his relationship with M.B. was condoned by her mother,
Detective Hubbard, and petitioner's friend Deborah Handley and
various friends and members of M.B.'s family who would have
testified that petitioner was unaware that M.B. was underage,
that the relationship was consensual, and that M.B.'s mother and
other family members approved of the relationship in exchange for
drugs.

While it is true that an attorney must engage in a
reasonable amount of pretrial investigation, the record is silent
as to the nature and extent of counsel's investigation into the
facts and circumstances of the case. *See Bryant v. Scott,* 28
F.3d 1411, 1415 (5th Cir. 1994). Petitioner admitted to having
sexual intercourse with M.B., who was younger than 17 years of
age at the time. Evidence that he was unaware M.B. was underage
or that the relationship was consensual would have been
irrelevant to petitioner's guilt or innocence, *see infra.*
Counsel was in possession of the state's witness lists, the
state's notice of bad acts, a copy of the state's file, the DPS
records, *albeit* not until the day trial commenced, and other
relevant information prior to trial. Petitioner fails to show
what a more thorough investigation would have revealed and how it

would have aided or altered his defense or the outcome of his trial.

Further, complaints of uncalled witnesses are not favored in federal habeas corpus review because presentation of testimonial evidence is a matter of trial strategy and because of their highly speculative nature. *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002). To prevail on an ineffective assistance claim based on counsel's failure to call a witness, a petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense. *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001). This showing is required for claims regarding uncalled lay and expert witnesses alike. *See, e.g., Evans,* 285 F.3d at 377-78 (rejecting uncalled expert witness claim where petitioner failed to present evidence of what a scientific expert would have stated); *United States v. Doublin,* 54 Fed. Appx. 410, 2002 WL 31689398, at *2 (5th Cir. 2002). Where the only evidence of a missing witness's testimony is from the defendant, the court views claims of ineffective assistance with great caution. *Sayre,* 238 F.3d at 635-36; *Lockhart v.*

13

*McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986).

Based on the record, it is impossible to determine whether and/or to what extent counsel attempted to contact and interview witnesses before trial or whether the witnesses were available and would have agreed to be questioned by counsel beforehand. Further, petitioner has failed to demonstrate, by affidavit or other evidence, what a DNA expert would have stated, what results of additional scientific tests would have yielded, and whether an expert would have expressed an opinion in his favor. Nor has petitioner demonstrated that other witnesses would have been available and willing to testify on his behalf, save for his friend Deborah Handley. In the state habeas proceedings, petitioner presented only two affidavits, both by Handley executed on the same date, in which Handley states:

> During the latter part of 2004 and on into 2005, I witnessed a relationship that lasted about seven months between Thomas Martin and M.B. While they were together, M.B. got pregnant and was expecting to have the baby. At the time, we were all under the impression that M.B. was of age. She never attended school, and she never had any rules. She was out all hours of the night with us. M.B. would get very possessive over Thomas Martin and would throw a fit if he ever tried to leave without her. When his kids were around, M.B. treated them like they were her own. M.B.[']s mother, L.B., M.B.[']s sisters, T.B., C.B. and K.B., K.B.'s kid J.M. and his dad M.M. all lived in the house with M.B. There was lots of drug use going on in

the house with lots of visitors dropping by all night
long.  L.B., M.B.'s mother, was not only aware of this
relationship, but she seemed to encourage it.  If
Thomas Martin was around, that means I would be around,
and they would have free drugs to smoke in addition to
the drugs Thomas Martin was using to pay his rent.
Both L.B. and K.B. were using methamphetamine and on
two separate occasions their electricity and water were
shut off and they did not have the money to pay the
bills, so I met up with K.B. to give her the money to
pay the bills.  I also regularly supplied L.B. and K.B.
with methamphetamine to smoke.  On several occasions,
L.B. and K.B. asked me to meet them up at the WalMart
so that they could buy groceries for me on their Lone
Star card in exchange for methamphetamine.  I had
attempted to contact Charles Roach numerous times and
my calls were never returned.  I was not contacted by
Charles Roach until the day before Thomas Martin[']s
last trial, therefore I was unable to make it.  (State
Habeas R. at 47-49)


Thomas Martin has made his share of mistakes, but he is
a really incredible person underneath it all.  I have
known him for several years and he and I have been
through a lot together.  I have witnessed him at his
very worst, and I have also witnessed him at his best.
Thomas Martin, at his worst, would never want to cause
another person harm or grief.  He is very sensitive and
empathetic.  I have met his children and witnessed the
way he cares for them as well as the way they interact
when they are together.  His kids love him more than
anything, and he is so good with them.  He always made
his children his first priority.  Thomas Martin is also
a very caring friend.  He has been there for me at
times when no one else would.  Thomas Martin is also
incredibly gifted and talented.  He is an artist and a
poet/songwriter and when he gets focused he will go
far.  This is a man with a kind heart and a good soul
and I pray that he will have another shot at life
before he gets too old.  Thank you.  (State Habeas R.
at 50-51)

Handley's testimony regarding petitioner's alleged seven-month relationship with M.B., condoned by her mother, would have been irrelevant to the question of whether petitioner committed the offense.  Further, although Handley's character testimony may have been admissible during the punishment phase of trial, it cannot be said that there is a reasonable probability that petitioner's sentence would have been significantly less harsh had Handley testified.  Consequently, petitioner cannot show he was prejudiced as a result of counsel's failure to secure Handley as a witness or the trial court's denial of counsel's motion for a continuance on the day of trial to obtain Handley's presence. Petitioner's conclusory statements regarding the content of other uncalled witnesses' testimony are insufficient to demonstrate ineffective assistance.  *See United States v. Green*, 882 F.2d 882 F.2d 999, 1003 (5th Cir. 1989).

Petitioner claims counsel was ineffective for failing to review his mental health issues and the fact that he was heavily medicated during the months leading up to trial for psychiatric disorders.  The record reflects on the morning of trial, counsel informed the trial judge that petitioner, who was apparently upset with counsel, had indicated he wanted to talk to an

"M.H.M.R." counselor before he "went off."   When questioned,
petitioner told the judge that he had seen an M.H.M.R. counselor
several weeks before trial and was on enough medication to "put
five people to sleep."   (RR, vol. 2, at 5)   Even assuming
petitioner was in fact taking medication before and during trial,
he has not shown how his ability to participate and assist in his
defense was substantially undermined by the medication.
Conclusory and unsupported allegations of diminished mental
capacity and/or mental illness in petitioner's pleadings are
insufficient to support a claim that counsel was ineffective for
failing to investigate his mental health.   *See United States v.
Puckett*, 505 F.3d 377, 388 (5th Cir. 2007).   Nothing in the
record reflects petitioner suffered from a mental impairment,
defect or disease, other than "mood swings," that counsel was on
notice of any such mental impairment, defect or disease that
could have been a viable defense such that further investigation
was warranted, or that petitioner was unable to communicate with
counsel or participate and assist counsel in his defense.

Petitioner claims counsel was ineffective for failing to
have a polygraph test administered, as he requested.   According
to petitioner, it "couldn't have hurt" because, if he had passed

the test, the results would have supported his assertion that he
did not know M.B.'s age.  Mere conclusory allegations in support
of a claim of ineffective assistance of counsel are insufficient
to raise a constitutional issue.  *Green v. Johnson*, 160 F.3d
1029, 1042 (5th Cir. 1998).  Moreover, even had petitioner taken
and passed a polygraph test on the issue, the results would had
been inadmissable for all purposes and irrelevant to whether
petitioner committed the offense.  *Tennard v. State*, 802 S.W.2d
678, 683 (Tex. Crim. App. 1990); *Nethery v. State*, 692 S.W.2d
686, 700 (Tex. Crim. App. 1985).

**4)   *Failure to Ensure Conflict-Free Jury***

Petitioner claims counsel was ineffective by failing to
request a continuance to ensure a conflict-free jury, given that
city bus drivers were on strike and it was storming the morning
of trial.  He urges these obstacles could have caused conflict in
the jurors' minds.  This claim is mere speculation.  An
ineffective assistance claim based on speculation will not
warrant habeas relief.  *Lincecum v. Collins*, 958 F.2d 1271, 1279-
80 (5th Cir. 1992).  Nothing whatsoever in the record suggests
the circumstances affected the jury's impartiality, the jury's
ability to consider the evidence and follow the court's

18

instructions, or the jury's deliberations.

### 5)   *Voir Dire and Failure to Prepare Opening Statement*

Petitioner claims counsel was ineffective by stating during
voir dire that he was appointed to represent petitioner rather
than retained.  According to petitioner, this information could
have caused biased opinions among the venire panel that he was
indigent and/or incarcerated at the time of trial.  Petitioner
has not demonstrated counsel was deficient for making the
statement or that the statement rendered his trial fundamentally
unfair.  *See, e.g., Sanchez v. Quarterman*, No. 3:08-CV-845-K,
2009 WL 2252006, at *1 (N.D. Tex. July 27, 2009).

Similarly, the bare fact that counsel made no opening
statement establishes neither deficient performance nor
prejudice.  The decision whether to make an opening statement
"falls within the zone of trial strategy."  *Murray v. Maggio*,
736 F.2d 279, 283 (5th Cir. 1984).  Petitioner argues generally
that counsel was ineffective by not preparing an opening
statement, however he does not suggest what counsel should have
said or why he was prejudiced by counsel's failure to avail
himself of the opportunity.  Because the defense called no
witnesses, counsel may have had strategic reasons for waiting

until closing argument to address the jury.

**6)    *Failure to Object to and/or Request Jury Instructions***

Petitioner claims counsel was ineffective by failing to request exclusion of a jury instruction on the issue of good conduct time from the jury charge in the punishment phase, given that he is ineligible for mandatory supervision and good conduct does not effect his eligibility for parole.  The instruction was statutorily required in petitioner's case.  *See* TEX. CODE CRIM. PROC. art. 37.07, § 4 (Vernon Supp. 2009).  Counsel is not required to make futile motions or objections.  *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990).

Petitioner claims counsel was ineffective by failing to request a jury instruction on the lesser included offense of indecency with a child, as alleged in paragraph two of the indictment.  Paragraph two of the indictment alleges that petitioner "did then and there intentionally and knowingly cause the sexual organ of M.B., a child younger than 17 years of age who was not the spouse of said defendant to contact the sexual organ of the said defendant."  (Clerk's R. at 2)

Contrary to petitioner's assertion, paragraph two is an alternative method of committing sexual assault of a child under

20

§ 22.011(a)(2) of the Texas Penal Code, and the jury was instructed on both methods. *See* TEX. PENAL CODE ANN. § 22.011(a)(2)(A) & (C). Further, in order to be entitled to a charge on a lesser included offense under Texas law, a criminal defendant must show (1) that the lesser offense is included within the proof of the offense charged and (2) that there is some evidence that he, if guilty, is guilty only of the lesser included offense. *Rousseau v. State,* 855 S.W.2d 666, 672 (Tex. Crim. App. 1993). A person commits indecency with a child if the person engages in (1) sexual contact with the child or causes the child to engage in sexual contact; (2) with intent to arouse or gratify the sexual desire of any person, exposes the person's anus or any part of the person's genitals, knowing the child is present; or (3) causes the child to expose the child's anus or any part of the child's genitals. TEX. PENAL CODE ANN. § 21.11(a) (Vernon Supp. 2009). Petitioner admitted to having a sexual relationship with M.B., a child younger than 17, and fathered a child with her. Petitioner cannot demonstrate under the circumstances of this case that, if guilty, he was only guilty of the lesser offense.

**7)   *Failure to Object to Testimony and Improper Question***

Petitioner claims counsel was ineffective by failing to timely object to testimony from detention officer, Armando Caseres, during the punishment phase that petitioner had made verbal threats to him in jail, for which an unrelated criminal case was pending in the trial court, and the prosecutor's question regarding whether petitioner was "part of a group" in jail that "caused him to be separated from any other parts of groups (a gang affiliation)."  (RR, vol. 4, at 27-38)  Under 37.07, § 3(a)(1) of the Texas Code of Criminal Procedure, "any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act" is admissible at punishment.   TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Vernon Supp. 2009).  The state provided notice of the extraneous offense and the jury was properly instructed on the issue. (Clerk's R. at 14, 43)  Any objection would have been frivolous. Counsel is not required to make frivolous objections.  *Koch*, 907 F.2d at 527.

22

Furthermore, as to any suggestion of gang affiliation,
counsel questioned Casares on the issue outside the presence of
the jury, raised an objection to any such testimony, which was
granted, and requested and received a jury instruction to
disregard the question.  (RR, vol. 4, at 29-32)  Juries are
presumed to follow the court's instructions.  *Greer v. Miller*,
483 U.S. 756, 766 n.8 (1987).

### 8)    *Improper Closing Argument*

Petitioner claims counsel was ineffective by commenting that
petitioner was not a nice person during closing argument in the
punishment phase.  (RR, vol. 4, at 52-54)  Evidence of
petitioner's twelve prior offenses was admitted during the
punishment hearing.  Having reviewed the closing argument in its
entirety, counsel's uncomplimentary comment about petitioner was
not ineffective assistance where, although counsel acknowledged
petitioner's lengthy criminal history and need for punishment, he
also asked the jury to take all the circumstances of the case and
the nature of petitioner's prior convictions into consideration
and pleaded for a light prison sentence.  Counsel's approach
during closing argument was a matter of trial tactics and
strategy.  Such decisions, "if based on informed and reasoned

23

practical judgment" will not be second-guessed. *Ransom v. Johnson*, 126 F.3d 716, 721 (5th Cir. 1997). Counsel was hoping that his candor would lead the jury to look more favorably upon petitioner when assessing punishment.

In summary, the totality of the representation provided by counsel to petitioner was well within an objective standard of reasonableness. Petitioner presents no compelling argument or evidence to overcome the strong presumption that his trial counsel was competent or that but for counsel's alleged acts or omissions, the result of his trial would have been different. The state court's denial of petitioner's claims is not objectively unreasonable nor is it contrary to or involve an unreasonable application of *Strickland*.

For the reasons discussed herein,

The court ORDERS the petition of petitioner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied.

Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Court, and 28 U.S.C. § 2253(c), for the reasons discussed herein, the court further ORDERS that a

certificate of appealability be, and is hereby, denied, as

petitioner has not made a substantial showing of the denial of a

constitutional right.

SIGNED July _____, 2010.

_____
JOHN McBRYDE
United States District Judge